## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**WENDY M. EWING,**

        **Plaintiff,**        **CIVIL ACTION NO. 08-11106**

    **vs.**        **DISTRICT JUDGE NANCY G. EDMUNDS**

        **MAGISTRATE JUDGE MONA K. MAJZOUB**

**COMMISSIONER OF
SOCIAL SECURITY,**

        **Defendant.**
_____/

### REPORT AND RECOMMENDATION

**I.**    **RECOMMENDATION:**    Plaintiff's Motion for Summary Judgment (docket no. 8) should be DENIED, that of Defendant (docket no. 11) GRANTED, and Plaintiff's Complaint DISMISSED.

***

**II.**   **PROCEDURAL HISTORY**

Plaintiff protectively filed an application for Disability and Disability Insurance Benefits on June 20, 2003, alleging that she had been disabled and unable to work since June 10, 2002, as a result of a heart condition, heart murmur and rheumatoid arthritis. (TR 35-38, 42, 51). The Social Security Administration denied benefits. (TR 27-30). A requested *de novo* hearing was held on May 24, 2005 before Administrative Law Judge (ALJ) Henry Perez Jr. (TR 11-17). On July 22, 2005 the ALJ issued a decision finding that the claimant could perform a limited range of light work, therefore, she was not entitled to a period of disability or Disability Insurance Benefits because she was not under a disability at any time through the date of the ALJ's decision. (TR 17). The Appeals Council (AC) denied review of the ALJ's decision. (TR 3-5). Plaintiff appealed to the District Court and the District Court adopted the Magistrate Judge's Report and Recommendation and

remanded the case for further proceedings. (Case No. 2:05-cv-74514 Docket nos. 17, 18). Plaintiff

appeared with counsel for hearing before the ALJ on June 6, 2007. (TR 227). On July 20, 2007 the

ALJ issued a decision finding that Plaintiff was not disabled at any time through the date of the

decision. (TR 227-232). The AC denied Plaintiff's Request for Review. (TR 217-19). The parties

filed Motions for Summary Judgment. The issue before the Court is whether the ALJ's decision is

supported by substantial evidence and whether the ALJ followed the District Court's December 4,

2006 Order.

### III.     PLAINTIFF'S TESTIMONY AND MEDICAL HISTORY

Plaintiff was born on February 17, 1964 and was 43 years old at the time of the ALJ's 2007

decision. (TR 36, 232). Plaintiff has a high school education and past work experience as a

housekeeper in a nursing home. (TR 43, 48, 61). Plaintiff alleges that she can no longer work in

housekeeping because she suffers from rheumatoid arthritis and stress causes her heart condition to

flare up. (TR 42, 58, 75).

At the May 2005 hearing, Plaintiff testified that suffers from stiffness, soreness, swelling and

cramping in her joints. (TR 200-01). She was taking methotrexate, Celebrex and Vicodin to treat

the arthritis and associated pain. (TR 202). Plaintiff testified that the medication did not provide

her with any relief. (TR 201). At the June 2007 hearing Plaintiff testified that she had been

prescribed Relafen for the arthritis and Ultram for her pain. (TR 293-94). Plaintiff testified that they

do not relieve the pain. (TR 294). Plaintiff also testified that she takes Aleve three times a day for

the pain. (TR 294).

At the June 2007 hearing Plaintiff testified that her condition had worsened and her bones

are deteriorating. (TR 291). She testified that at the time of the May 2005 hearing her hands and

knees were bothering her and at the time of the June 2007 hearing her shoulders and the joints in her

toes and her ankles were bothering her.  (TR 291).  At the time of the May 2005 hearing Plaintiff

had just had surgery on her right shoulder and Plaintiff testified at the June 2007 hearing that she

was scheduled to have surgery on her left shoulder.  (TR 291).

Plaintiff testified that sometimes she is not able to dress herself because her arm, shoulder,

hands and elbows are stiff and she cannot raise her arms so her daughter helps her get dressed.  (TR

295).  In June 2003 Plaintiff reported that on a "good day" she can get dressed, prepare breakfast

and clean her house.  (TR 70).  At the June 2007 hearing Plaintiff testified that her husband and

daughter clean the house, do laundry and grocery shop.  (TR 297).  Plaintiff testified that she cannot

sit and relax, due to stiffness and she cannot concentrate to read a book or newspaper or watch

television.  (TR 297).  Plaintiff testified that she had given up driving.  (TR 299).  Plaintiff states that

she can only stand for four minutes before her pain starts and she can "hardly" walk to the next-door

neighbors house.  (TR 301).

Plaintiff has a history of treatment and examination from 1997 to 2003 for complaints of

episodic chest pain.  (TR 90-136).  On August 27, 2002 Plaintiff was diagnosed with angina and

pulmonary hypertension following recurrent chest pain and angina symptoms.  (TR 93).  Non-

invasive testing showed no evidence of ischemia.  (TR 93).  Plaintiff underwent a cardiac

catheterization upon which Farouk Salahi, M.D. concluded that the hemodynamic data was normal

"with no evidence of pulmonary hypertension," normal left ventricular function and normal coronary

anatomy.  (TR 95).  On August 23, 2003 a state agency examining physician, Gregory J. Baker,

D.O.,  noted that Plaintiff's multiple cardiac work-ups had all been negative, her pain is relieved

with Xanax and he concluded that the chest pain "most likely represents anxiety attacks."  (TR 136).

Dr. Baker also noted that Plaintiff had suffered rheumatoid arthritis for ten years and significant difficulties using her digits and that she continues to drop things. (TR 136). He concluded that Plaintiff has ulnar deviation and mild dexterity loss but otherwise her exam was within normal limits. (TR 136). A chest x-ray taken on May 2, 2006 revealed borderline cardiomegaly and was negative for active disease. (TR 271).

The record contains evidence of Plaintiff's complaints of and treatment for rheumatoid arthritis from 2003 through 2007. (TR 138-190, 265-287). On July 31, 2003 Plaintiff underwent x-rays of the chest, bilateral knees and bilateral ankles. (TR 181). Nasser Barkhordari, M.D., noted that the knee joint was normal with no gross abnormality; exostosis was seen "arising from the medial aspect of the proximal tibia on the left side" and there was a "broad based exostosis at the proximal tibia in the medial aspect on the right." (TR 181). Otherwise, the x-rays revealed normal knees, a spur formation at the site of insertion of the Achilles tendon but no evidence of osseous injury in the ankles and no active disease in the chest. (TR 181).

On September 25, 2003 Plaintiff was examined by Parveen Qazi, M.D., for her active rheumatoid arthritis. (TR 177). Dr. Qazi noted that Plaintiff had synovitis in the metacarpophalangeal joint, wrists, proximal interphalangeal joints, mild hand deformities, tender elbows and shoulders, knees with synovitis and tenderness and feet with tender metatarsophalangeal joints. (TR 177). Plaintiff agreed to start taking methotrexate. (TR 177). On October 23, 2003 Plaintiff reported diarrhea and nausea as a result of the methotrexate. (TR 170). Plaintiff reported that she still had joint pain in the hands and knees and stiffness in the mornings. (TR 170). Dr. Qazi discussed treatment with Enbrel and Humira but noted that Plaintiff was "still very hesitant to take any injectable treatment." (TR 170). On December 18, 2003 Plaintiff reported that she had stopped

4

taking methotrexate due to nausea and gastrointestinal upset.  (TR 167).  Dr. Qazi noted that Plaintiff's knees were "very painful" and she had discomfort in her shoulders. (TR 167).  In March 2004 Dr. Qazi noted that Plaintiff continued to have "generalized joint pain"especially in the hands, knees and feet, worse in the mornings, with "marked stiffness."  The doctor noted that her "wrists are restricted."  (TR 161). In June 2004 Plaintiff reported some improvement in joint pain after starting hydroxychloroquine, but had a flair of pain in her knees and right shoulder.  (TR 157).

Plaintiff attended physical therapy for bilateral knee pain in July and August 2004 with the goal of decreasing the pain and independently maintaining a range of motion exercise program. (TR 151, 154-55).  Plaintiff complained of pain in her right shoulder, hand and knee.  (TR 152).  The discharge summary notes that Plaintiff reported only minimal pain, was participating in the walking program two to three times per week and was complying with strengthening and balance exercises. (TR 151).  It was also noted, however, that Plaintiff was unavailable for appointments made at her convenience and Plaintiff had only met part of the therapy goals.  (TR 151).  Plaintiff also attended occupational therapy in 2004 with the goal of increasing range of motion, decreasing pain and increasing function in activities of daily living.  (TR 149, 152-53).  A discharge summary dated September 8, 2004 shows that Plaintiff reported improvement in her pain and had made some progress but did not complete goals.  (TR 149).  Her attendance was inconsistent and she quit attending occupational therapy.  (TR 149).

In February 2005 Plaintiff reported to Dr. Qazi with a flare up of generalized joint pain which was worse in her right shoulder.  (TR 138).  Plaintiff reported that she was not taking methotrexate due to gastrointestinal side effects and she reported increasing body pain.  (TR 138). Plaintiff was willing to restart methotrexate with folic acid.  (TR 138). Associated x-rays of the right

shoulder showed no evidence of osseous injury and views of the hands showed no evidence of acute fracture or dislocation.  (TR 142).  May 2, 2006 x-rays of the right and left hands reveled "[n]o significant osseous or articular abnormalities," and "no fracture, dislocation, inflammatory, arthritic or neoplastic changes noted."  (TR 272).  X-rays of the right and left knees revealed small patellar spur formations at the quadriceps tendon insertion but were otherwise unremarkable.  (TR 272).  X-rays of the right and left feet revealed metallic screws at the base of the proximal phalanx and distal end of the first metatarsals with postoperative changes of both the left and right great toes, "otherwise both feet are essentially normal."  (TR 272).  May 2, 2006 x-rays of the right shoulder showed deformity of the lateral end of the right clavical but was otherwise unremarkable and "no acute fracture or dislocation or significant arthritis" was noted.  (TR 273).  X-rays of the left shoulder showed no significant osseous or articular abnormalities, and "no fracture, dislocation, inflammatory, arthritic, or neoplastic change" was noted.  (TR 273).

IV.   **ADMINISTRATIVE LAW JUDGE'S DETERMINATIONS:**

The ALJ found that although Plaintiff met the disability insured status requirements through December 31, 2007, had not engaged in substantial gainful activity since June 10, 2002, the alleged onset date of her disability, and suffered from rheumatoid arthritis and osteoarthritis, both severe impairments, and the non-severe medical condition of angina pectoris, she did not have an impairment or combination of impairments that met or equaled the Listing of Impairments.  (TR 51, 230).  The ALJ incorporated his findings from his July 22, 2005 decision, which were upheld by the District Court with respect to Plaintiff's RFC.  (TR 230).  The ALJ found that Plaintiff was unable to perform her past relevant work, but was capable of performing a limited range of light work and there were a significant number of such jobs existing in the national and local economy.  (TR 230).

6

Therefore, she was not suffering from a disability under the Social Security Act.  (TR 230-32).

## V.      LAW AND ANALYSIS

### A.      STANDARD OF REVIEW:

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.   "[I]f the Appeals Council grants review of a claim, then the decision that the Council issues is the Commissioner's final decision."  *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). The ALJ's July 20, 2007 decision is the final decision to be reviewed in this matter.  Because the July 2007 decision incorporates portions of the ALJ's earlier findings, both decisions are referenced in the analysis.

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions.  Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528.  It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole.  *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by

substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Commissioner*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B. FRAMEWORK FOR SOCIAL SECURITY DISABILITY DETERMINATIONS:

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)   she was not presently engaged in substantial gainful employment; and

(2)   she suffered from a severe impairment; and

(3)   the impairment met or was medically equal to a "listed impairment;" or

(4)   she did not have the residual functional capacity ("RFC") to perform her relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented her from doing her past work, the Commissioner, at step five, would consider her RFC, age, education and past work experience to determine if she could perform other work. If she could not, she would be deemed disabled. *See* 20 C.F.R. § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualification to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence"

may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C.     ANALYSIS

The District Court remanded this case on December 4, 2006 following the ALJ's July 2005 decision for the limited purpose of further fact finding on the ALJ's step five inquiry and for the ALJ to resolve any conflicts between the VE testimony and the information in the Dictionary of Occupational Titles (DOT) and the Selected Characteristics of Occupations as required under SSR 00-4p. (TR 23). The District Court specifically found that substantial evidence supports the ALJ's RFC finding in the July 2005 decision. (Case no. 2:05-cv-74514, docket no. 17). Plaintiff's sole issue on appeal is whether the ALJ's hypothetical question to the vocational expert (VE) was inaccurate because it failed to include all of Plaintiff limitations. (Docket no. 8). Plaintiff did not appeal the issue of whether the VE's testimony was consistent with SSR 00-4p and the ALJ's subsequent reliance on that testimony other than with respect to the accuracy of the hypothetical question posed to the VE.

Despite Plaintiff's failure to appeal the issue, the Court notes that the ALJ acted in accordance with the Court's prior order and asked the VE whether her testimony was consistent with the DOT. (TR 310). SSR 00-4p provides that the adjudicator must resolve a conflict between the DOT and the VE "before relying on the VE . . . evidence." The ALJ elicited an explanation from the VE for any conflict between her testimony and the DOT. The VE testified to the following:

> I have discussed some service occupations and the Dictionary of Occupational Titles is a compendium of many occupations. There are approximately 12,000 or so occupations and many of the occupations that are described in the Dictionary are composites of several occupations combined into one description, so then that

expands the total number of occupations to a greater level. That being said, Your Honor, the Dictionary of Occupational Titles was last physically published in 1991 and it -- at the time it was published, the jobs were described as they were more frequently found in the economy at the time that those occupations were date -- last updated, and -- or DLU as it's sometimes referred to -- and it has never addressed the issue of jobs with the sit/stand option. I know from working in the rehab area and working with clients and analyzing occupations that the small subset that I mentioned, Your Honor, based on my work experience, does exist in the economy. (TR 311).

The VE properly based her information about these specific jobs on her experience. (TR 311). *See* SSR 00-4p ("Information about a particular job's requirements or about occupations not listed in the DOT may be available . . . from a VE's or VS's experience in job placement or career counseling." *Id.* at *3).

In light of the District Court's order remanding this matter, the ALJ properly limited the scope of his determination to step five on remand. *See generally Gower v. Astrue*, 2008 WL 2852255 (M.D. Tenn. July 23, 2008) (Where the Sixth Circuit remanded solely for a step five determination, the ALJ did not comply with the Sixth Circuit's mandate when he performed a *de novo* review of the case); *Ischay v. Barnhart*, 383 F. Supp. 2d 1199, 1218-19 (C.D. Cal. 2005) ([G]iven that the scope of the remand order was so narrow as to permit the ALJ to revisit a step-five issue, it was clear that the remand was solely for purposes of permitting the ALJ to re-determine whether Plaintiff was disabled at step five. . . . The stipulated remand did not entitle the ALJ to disturb or revisit his analysis through step four of the sequential process."). The Court, however, has reviewed the record in full and will address Plaintiff's allegations.

Plaintiff challenges the accuracy of the ALJ's hypothetical question to the VE at the 2007 hearing. Plaintiff argues that the ALJ's hypothetical question was inaccurate because there is no evidence in the record that Plaintiff could lift any item at any weight frequently, the ALJ did not

10

incorporate Plaintiff's testimony and the ALJ disregarded Dr. Qazi's May 7, 2007 opinion that Plaintiff has joint pain, swelling, stiffness, fatigue and weakness.  In a hypothetical question posed to a VE, an ALJ is required to incorporate only those limitations which he finds credible and supported by the record and the ALJ did so.  *See Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1235 (6th Cir. 1993).  Although the ALJ heard and considered testimony from Plaintiff at the 2007 hearing, he maintained the same RFC from the July 2005 decision, which the District Court specifically found was supported by substantial evidence.  (Case no. 2:05-cv-74514, docket nos. 17, 18).

The ALJ determined that Plaintiff had the RFC to perform a limited range of light work with the following limitations: the ability to lift and carry ten pounds frequently and twenty pounds occasionally, the need for a sit/stand option, only occasional reaching overhead with the bilateral shoulders and occasional performing gross and fine manipulation.  (TR 230).  The RFC for light work includes the ability to perform sedentary work within the same limitations.  *See* 20 C.F.R. § 404.1568(b) ("If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

At the June 6, 2007 hearing the ALJ asked the VE to consider a person of Plaintiff's age, education and work experience with an exertional limitation of lifting twenty pounds occasionally and ten pounds frequently, limited to occasional reaching above shoulder level and occasional handling and fine manipulation and needing a sit/stand option and unskilled work.  (TR 304-05).  The VE testified that Plaintiff's past work in housekeeping at a nursing home ranged from light to medium exertion and unskilled, despite Plaintiff's description that she lifted no more than twenty

11

pounds in that job, and that the hypothetical person could not perform Plaintiff's past relevant work because that work was at times performed at the medium exertional level and did not allow a sit/stand option. (TR 305). The ALJ then asked whether there is other work in the economy that such a person could perform. (TR 305). The VE testified that the hypothetical question posed by the ALJ limited Plaintiff to jobs in the industrial manufacturing areas where sit/stand light occupations are located. (TR 305). The VE further testified that those jobs require frequent to continuous handling and fingering. (TR 305). Therefore, the "hypothetical would not be consistent with the smaller subset of light occupations with a sit/stand option," and there are no jobs available. (TR 305).

The ALJ then asked the VE to consider the same hypothetical question with an exertional limitation of lifting up to ten pounds occasionally and five pounds frequently. (TR 306). The VE testified that this exertional reduction "effectively reduced [Plaintiff] . . . to an unskilled, sedentary occupation with a sit/stand option." (TR 306). The VE testified that Plaintiff would be limited to "a small subset of what are referred to more commonly as service occupations, . . . . And those cases, those jobs have occasional handling and fingering as opposed to frequent, . . . ." (TR 307). The VE testified that the subset of occupations includes information clerks, lobby attendants and surveillance monitors and there are collectively 3,000 of these jobs in the state and 1,500 in the Southeast Michigan area. (TR 307-08). The VE further testified that if Plaintiff's testimony was credible regarding the exertional impairments supported by the medical evidence, and Plaintiff would, at best, need a sedentary job with a sit/stand option and that would be consistent with the jobs already listed by the VE. (TR 308). Finally, the VE stated that if Plaintiff's testimony regarding non-exertional and postural limitations were considered, there would be no jobs existing in

12

significant numbers in the regional or national economy which Plaintiff could perform. (TR 308).

The ALJ's hypothetical questions to the VE incorporated the exertional and non-exertional limitations of Plaintiff's RFC. The Court need not visit Plaintiff's allegation that there is no evidence in the record that Plaintiff can lift any weight frequently. That issue was resolved with the prior RFC determination, which the District Court found was supported by substantial evidence. Next, to the extent that Plaintiff argues that the ALJ did not adopt her testimony that her condition had worsened since the prior hearing, Plaintiff points to no medical evidence supporting this allegation and the Court notes that the record does not contain any medical evidence supporting this assertion or supporting limitations greater than those afforded by the ALJ's RFC findings.

Finally, Plaintiff argues that the ALJ did not give proper weight to Dr. Qazi's May 7, 2007 letter stating that Plaintiff "suffers from rheumatoid arthritis, and has generalized joint pain, swelling, stiffness, fatigue and weakness" and that "[b]ecause of her underlying musculoskeletal condition she has not been able to work and has been totally disabled." (TR 287). Dr. Qazi's May 7, 2007 letter provides essentially the same evidence as Dr. Qazi's April 25, 2005 letter, yet it contains less specific information than the April 2005 letter because it does not mention x-rays, right shoulder pain, intermittent anemia and leukopenia or severe stiffness in the morning. (TR 190, 287). (TR 15, 190, 287). In the July 2005 decision, the ALJ fully considered Dr. Qazi's April 2005 letter and properly explained the weight given to it. *See* 20 C.F.R. § 404.1527(d)(2) (the ALJ must give a treating source's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record). Contrary to Plaintiff's allegations, the May 7, 2007 letter does not evidence a progression in Plaintiff's condition and is not supported by medical evidence. Furthermore, the

13

determination of Plaintiff's disability is left to the Commissioner.  Dispositive administrative findings relating to the determination of a disability and Plaintiff's RFC are issues reserved to the Commissioner.  *See* 20 C.F.R. § 404.1527(e).  The ALJ "is not required to accept a treating physician's conclusory opinion on the ultimate issue of disability."  *Maple v. Apfel*, 14 Fed. Appx. 525, 536 (6th Cir. 2001); *see also* 20 C.F.R. § 404.1527(e).  The ALJ did not err in failing to adopt Dr. Qazi's opinion that Plaintiff is or has been disabled.  The Court finds that the ALJ's decision through step five was based on substantial evidence and there is simply insufficient evidence to find otherwise.

## VI.   RECOMMENDATION

Defendant's Motion for Summary Judgement (docket no.11) should be GRANTED. Plaintiff's Motion for Summary Judgment (docket no. 8) should be DENIED and Plaintiff's complaint should be DISMISSED.

## REVIEW OF REPORT AND RECOMMENDATION:

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Rule 72.1(d)(2) of the *Local Rules of*

*the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: January 13, 2009                                s/ Mona K. Majzoub
                                                       MONA K. MAJZOUB
                                                       UNITED STATES MAGISTRATE JUDGE



## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: January 13, 2009                                s/ Lisa C. Bartlett
                                                       Courtroom Deputy

15